# AFFIDAVIT OF SPECIAL AGENT BRADY O'DONNELL

I, Special Agent Brady O'Donnell, being duly sworn, depose and state that:

## INTRODUCTION

1. I have been employed by the Drug Enforcement Administration ("DEA") since August of 2020. I am currently assigned to the New England Field Division, Task Force 5 as a Special Agent, where I am tasked to investigate drug trafficking and money laundering organizations, and their ties to violent crime. I graduated from the DEA Basic Agent Training Academy in Quantico, Virginia in December of 2020, where I received specialized training in narcotics and money laundering investigations and related legal matters. Prior to my employment as a Special Agent, I was employed as a regional development officer for DeliverFund, which is a private counter-human trafficking intelligence company. DeliverFund is based in Dallas, Texas and focuses on training state and local law enforcement in specialized counter-human trafficking investigative techniques. Before that, I completed a graduate degree in Public Affairs from Brown University in Providence, Rhode Island, where I focused on policy related to national security, public safety, and transnational criminal investigative models.

2. During my specialized training at the DEA Training Academy, I participated in numerous exercises including the use of confidential informants, undercover operations, physical and electronic surveillance, telephone toll analysis, investigative interviews, and the execution of search and seizure warrants. In addition, I was further trained in specialized defensive tactics, firearms training, raid and entry tactics, judgmental shooting, and legal training.

3. I have participated in many aspects of drug and money laundering investigations, including physical surveillance, surveillance of undercover transactions, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking and money laundering organizations. I

am familiar with the benefits and limitations of these techniques. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods and means of moving payments for such drugs. I have also become familiar with the manner in which narcotics organizations use various forms of violence and intimidation in furtherance of their narcotics trafficking activity to protect their operations, members, narcotics, and narcotics proceeds.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of a Verified Complaint for Forfeiture against the following asset:

   a. $131,984 in United States Currency seized on October 14, 2021 from Quarry Street in Quincy, Massachusetts (the "Defendant Property").

5. The Defendant Property was seized from the home of Raymond JIANG ("JIANG"). As detailed below, the Defendant Property is believed to be proceeds of and/or property used to facilitate the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit drug trafficking offenses, in violation of 21 U.S.C. § 846. Specifically, JIANG stored large quantities of marijuana and cash—including the Defendant Property—in his residence in Quincy, Massachusetts.

6. I am familiar with the facts and circumstances of this investigation, and I have received information from a variety of sources, including but not limited to other law enforcement officers and agents, confidential sources, court-ordered interception of wire and electronic communications, and my personal review of records and reports relating to the investigation.

7. Based the above-described information gathered by law enforcement, as well as my training and experience, and for all the reasons set forth herein, probable cause exists to believe

that the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished in exchange for controlled substances, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate any violation of 21 U.S.C. §§ 841 and/or 846—specifically, the sale of marijuana.

8. This affidavit does not contain each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for forfeiture of the Defendant Property.

## PROBABLE CAUSE

9. Since approximately January 2021, investigators with DEA have been conducting an ongoing investigation into numerous individuals involved in selling large quantities of marijuana and laundering large quantities of United States currency, including proceeds from that drug trafficking.

10. Based on the investigation, I believe that JIANG works with others, including Jin Shi ZHU ("ZHU") and at least two other men (the "Co-conspirators") to traffic marijuana.

11. Investigators initially began focusing on ZHU after he was surveilled making two suspected deliveries of marijuana—on March 11, 2021 and April 1, 2021—believed to be on behalf of another man, Chengzou LIU ("LIU"). A federal grand jury sitting in the District of Massachusetts indicted LIU for money laundering conspiracy and possession with intent to distribute marijuana, and the case is currently pending. *See United States v. Zhang, et al.*, Crim. Action No. 22-cr-10185-IT.

### Law Enforcement Observed Marijuana Being Delivered to JIANG's Residence

12. Investigators conducted physical and electronic surveillance of ZHU, including in October 2021. On October 9, 2021, at approximately 3:35 a.m., court-authorized GPS data for

3

ZHU's vehicle indicated that it traveled down to a Home Depot parking lot in Flushing, Queens, New York, arriving at approximately 6:32 a.m. Less than a half hour later, ZHU's vehicle turned around and traveled back to Massachusetts. At approximately 11:37 a.m., investigators conducted a traffic stop of ZHU's vehicle and located approximately 91 pounds of marijuana, which they seized.

13. After receiving and waiving his *Miranda* rights, ZHU told investigators that he had picked up the marijuana from an individual in New York and was set to deliver the marijuana to an individual in Quincy, Massachusetts. ZHU stated that he works for two other men in Quincy to distribute marijuana (the Co-conspirators), and provided investigators with their names. After speaking with investigators, ZHU was released without charges, but investigators seized the marijuana.

14. On the afternoon of October 14, 2021, investigators conducted physical surveillance in Quincy, Massachusetts—at JIANG's residence on Quarry Street[1]—and observed ZHU drive and park in the driveway of the residence. ZHU was driving a different vehicle than the one in which he was stopped on October 9, 2021. ZHU retrieved multiple large trash bags from the vehicle and carried them into JIANG's residence, where he remained for approximately a half hour. ZHU then exited JIANG's residence carrying a paper grocery-style bag, which he put into trunk of the vehicle. As ZHU drove away, investigators again stopped ZHU, and seized approximately two pounds of marijuana in his vehicle.

15. Later that same day, investigators observed JIANG walk out of his residence with a large trash bag (similar to the bags ZHU had delivered), which he put into his vehicle and drove

---

[1] The specific street address is not included in this affidavit but is known to the government.

away. Investigators stopped JIANG and located approximately 10 pounds of marijuana in the trash bag and approximately $6,399 in cash in JIANG's vehicle.

16. Based on these observations, I believe ZHU delivered at least 10 pounds of marijuana to JIANG. I further believe JIANG loaded marijuana from his residence into his vehicle because he was intending to deliver that marijuana to one or more customers. I further believe JIANG used his residence as a storage location for marijuana and marijuana proceeds.

17. JIANG does not have a license to sell marijuana in Massachusetts.

18. Based on my training and experience, I believe marijuana can easily sell for around $2,000 a pound on the black market, and therefore believe JIANG was transporting approximately $20,000 worth of marijuana on October 14, 2021, in addition to the $6,399 in suspected cash drug proceeds.

## The Consented-to Search of JIANG's Residence

19. On October 14, 2021, JIANG consented to a search of his residence by law enforcement , and signed a written consent form (which was read to him in Mandarin, the language in which he spoke with the DEA's linguist). When investigators entered the residence, they encountered four other individuals, all of whom also stated that they lived there.

20. JIANG told investigators that he had multiple pounds of marijuana in the garage and the room next to it, and pointed these areas out to investigators. JIANG also stated that he had three firearms in the house and numerous amounts of ammunition in his safe, as well as loose ammunition in a plastic bag in the garage.

21. In the garage, investigators located numerous bags of marijuana, as well as United States currency, and a sandwich bag containing 9mm ammunition. In the cellar, investigators

located additional bags of marijuana, as well as additional United States currency. *See* Exhibits A-1, A-2, A-3 (marijuana located throughout the residence).

22. In one bedroom—which investigators believed, based on JIANG's statements, to be used by JIANG and his former wife Meixiu Huang ("HUANG")—investigators located large amounts of United States currency in multiple locations, including on a dresser, as well as inside the safe JIANG had referenced (some wrapped in elastics, some inside bags/pouches). *See* Exhibits A-4, A-5.

23. In that same bedroom, investigators located the three firearms (one semi-automatic pistol and two semi-automatic rifles) as well as approximately 200 rounds of ammunition JIANG had discussed. *See* Exhibits A-6, A-7. One of the rifles was in its case, while the other was out on top of a file cabinet, in the "ready" position—meaning it was capable of easily being fired. Based on my training and experience, I know that drug traffickers often maintain firearms in their residences and/or stash locations to protect the drugs and drug proceeds. Also based on my training and experience, ordinary citizens owning firearms for self-defense do not usually maintain those firearms out and in the "ready" position. As such, I believe JIANG's firearms inside his bedroom were maintained to protect the cash proceeds found inside that same bedroom.[2]

24. In total, investigators seized approximately 230 pounds of marijuana from all around the residence. Based on my training and experience, I believe the approximately 230 pounds of marijuana found inside JIANG's residence were worth approximately $460,000.

25. The total amount of cash seized from the residence in Quincy, Massachusetts was approximately $151,984.

---

[2] Although JIANG had a Massachusetts license to carry, the Boston Police Department seized the firearms from his residence due to the violation of 21 U.S.C. §§ 841 (marijuana trafficking), and JIANG's firearms license was revoked.

26. At the scene, investigators spoke to HUANG, who claimed that a single stack of United States currency on top of a dresser in the bedroom she shared with JIANG, wrapped in elastic bands, belonged to her. She stated that the money was from Keno at a restaurant she owned and was going to be used to pay her employees. Although the currency on the dresser was not separately counted, investigators do not believe (based on the size of the single stack) that the currency exceeded $20,000. *See* Exhibit A-8. After receiving documentation showing that HUANG was in fact affiliated with a restaurant that engaged in Keno, law enforcement agreed to return $20,000 to HUANG.

27. Excluding the $20,000 that the government agreed to return to HUANG, the currency seized from JIANG's residence totaled $131,984—comprising the Defendant Property.

28. Based on the above, I believe JIANG utilized his residence in Quincy as a storage location for drugs and drug proceeds and that the Defendant Property represents proceeds from and/or property used to facilitate the illegal sale of marijuana, in violation of 21 U.S.C. § 841 and/or 846.

## CONCLUSION

29. Based on my knowledge, training, and experience, and the information set forth above, probable cause exists to believe that the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes proceeds from and/or property used to facilitate the sale of marijuana in violation of 21 U.S.C. §§ 841 and/or 846.

Signed under the penalty and pains of perjury this __8th__ day of March, 2023.

*Brady O'Donnell*
_____
Brady O'Donnell
Special Agent
Drug Enforcement Administration